**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**               **Criminal No:  21-cr-20452**
                                  **Hon. Bernard A. Friedman**

**vs.**

**JOHN R. LYNCH,**

      **Defendant.**

---

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

**I.**   **<u>INTRODUCTION</u>**

      John Lynch (hereinafter "Mr. Lynch") is scheduled to be sentenced before this Honorable Court on February 16, 2022, at 10:30 a.m. Pursuant to a Rule 11 Plea Agreement, Mr. Lynch pleaded guilty to Count I of an Information which charged Mr. Lynch with wire fraud, in violation of 18 U.S.C. §1343. Based upon a Total Offense Level of 18 and a Criminal History Category of I, Mr. Lynch's advisory guideline range is 27 to 33 months.

      Mr. Lynch has been married since 1989 and is the father of nine children ranging in ages from 31 to 14. Mr. Lynch acknowledges that his decisions have had a devastating impact on his wife, children and his siblings. Mr. Lynch is truly remorseful for his actions and the betrayal of trust to the Holy Cross family.

In an effort to make things right, Mr. Lynch has been paying back the money he embezzled from Holy Cross since 2019. Pursuant to a Settlement Agreement with Holy Cross in 2019, Mr. Lynch agreed to pay $318,000. Although he can never completely make amends for what he did, he has consistently paid $5,000/month to Holy Cross. To date, Mr. Lynch has paid back over $257,000 to Holy Cross. As of this writing, Mr. Lynch has a balance of approximately $82,774. Pursuant to the Settlement Agreement, Mr. Lynch has paid interest in the amount of $21,774. If Mr. Lynch were to miss a payment, he will owe an additional $132,000 per the terms of the Settlement Agreement.

As this Honorable Court is acutely aware, the Court is required to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. §3553. Thus, the Court must consider the factors set forth in §3553(a). The Sentencing Guidelines are simply the starting point in the Court's determination of a defendant's sentence.

"[T]he sentencing court must first calculate the guideline range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors," *Nelson v. United States*, 555 U.S. 350, 351 (2009). "The guidelines are not only not mandatory on sentencing courts they are also not to be presumed reasonable." *Id.* at 352; *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). The guidelines are an "initial

benchmark" or "starting point, " *Gall* at 49, but there is no "thumb on the scale for the guideline range." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007). In determining a sentence, the sentencing court must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall* at 52.

## II.  SENTENCING FACTORS PURSUANT TO 18 U.S.C. §3553(a)

This Honorable Court is obviously well versed in the Supreme Court's ruling in *United States v. Booker,* 543 U.S. 220; 125 S. Ct. 757 (2005), which made the "guidelines effectively advisory," and "requires a sentencing court to tailor the sentence in light of other statutory concerns…see §3553(a) (Supp. 2004)".  After *Booker*, the Guidelines are to be "respectfully considered", but no one factor is to be given more or less weight than any other §3553(a) factor to be taken into account in arriving at an appropriate sentence.  *Kimbrough, supra*; *Rita, supra*.

Previously disapproved or disfavored departure factors such as physical condition (U.S.S.G. §5H1.4) employment record (U.S.S.G. §5H1.5); family ties and responsibilities (U.S.S.G. §5H1.6); socio-economic status (U.S.S.G. §5H1.10); and substance abuse (U.S.S.G. §5H1.4) may now be considered.  Post *Booker,* there is no limitation on the information concerning the background, character and

conduct of a defendant which a court may receive and consider for the purposes of imposing an appropriate sentence.  18 U.S.C. §3661.

The United States Code is quite explicit about the role of 18 U.S.C. §3553(a) in sentencing determinations.  18 U.S.C. §3582 specifically states:

> The court, in determining whether to impose a term of imprisonment and, if a term of imprisonment is to be imposed in determining the length of this term, <u>shall</u> <u>consider</u> the factors set forth in section 3553(a) to the extent they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.
> (Emphasis added).

The district court can also make independent assessments to justify an individualized sentence determination. In *Rita, supra*, the Supreme Court held that the district courts can conclude that the guideline sentence fails to reflect 18 U.S.C. §3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate "regardless."

> <u>Booker</u> breathes life into the authority of district court judges to engage in individualized sentencing within reason in applying the §3553(a) factors to the criminal defendants that come before them. If there is a pattern that emerges from *Rita, Gall* and *Kimbrough*, it is that the district court judges were vindicated in all three cases, and a court of appeals was affirmed just once and that of course was when it deferred to the on-the-scene judgment of the district court. *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir.) (en banc), *cert. denied*, 129 S. Ct. 67 (2008).

Variances are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves. Many courts have held that district judges need not shrink from utilizing variances when the opportunity presents itself and when the circumstances require such action to bring about a fair and reasonable sentence. Sentencing is a difficult art and it is easy to make it mechanical. However, what it should be is an act of reason by the Judge looking at a particular person and the circumstances of the crime this person has committed and then making a judgment. *United States v. Dominquez*, 296 F.3d 192, 196 n.7 (3rd Cir. 2002) ("The Guidelines do not require a judge to leave compassion and common sense at the door to a courtroom".); *United States v. Meyers*, 353 F. Supp. 2d 1026, 2017 (S.D. Iowa 2005) ("[i]f the 600-plus pages of the most recent set of sentencing guidelines have taught us anything, it is that punishment cannot be reduced to an algorithm."); *United States v. Biheiri*, 356 F. Supp. 2d 589 (E.D. Va. 2005) ("fashioning a just sentence cannot be reduced to a mere arithmetical exercise and that reliance solely on numbers, quantities, offense levels, criminal history categories, and matrices produce an illusory precision that obscures the fact <u>that sentencing in the end, must involve the exercise of judgment</u>".) (Emphases added)

Mr. Lynch respectfully requests that the Court consider the following 3553(a) factors and fashion a sentence substantially below the guideline range.

Given the fact that Mr. Lynch has only $87,000 left to pay back to Holy Cross, a non-custodial sentence will provide Mr. Lynch the opportunity to make Holy Cross whole.

### A.   NATURE AND CIRCUMSTANCE OF THE OFFENSE PURSUANT TO 18 U.S.C. §3553(a)(1)

Mr. Lynch does not take issue with the circumstances of the offense and his involvement. Mr. Lynch understands that his actions are not acceptable and that his conduct has affected his family and loved ones as well as the Holy Cross family. To be sure, Mr. Lynch is remorseful for his actions. He knows he has embarrassed his wife, his nine children and his family name. Mr. Lynch acknowledges that he only has himself to blame for what he has done. He fully understands that there are consequences for bad decisions.

### B.   HISTORY AND CHARACTERISTICS OF THE DEFENDANT PURSUANT TO 18 U.S.C. §3553(a)(1)

In determining an appropriate sentence, this Honorable Court must consider not only the nature and circumstances of the offense, but also the history and characteristics of Mr. Lynch.   18 U.S.C. §3553(a)(1) codifies the fundamental principle that the Court is to sentence a human being and not merely his misdeeds.

Part C, Offender Characteristics, paragraphs 46 through 69 of the PSIR, are an accurate recitation of Mr. Lynch's personal and family data, his physical

condition, his mental and emotional health, his substance abuse, his education, employment history and financial condition.

Although the PSIR has provided this Honorable Court with accurate data regarding Mr. Lynch's life, the PSIR does not provide a full and complete picture of who Mr. Lynch really is. The fact that Mr. Lynch has committed a crime does not completely define him. Mr. Lynch is a dedicated husband, father and brother. Over the course of his life, Mr. Lynch has demonstrated love, compassion, empathy and kindness. Attached as Exhibit 1 are four character letters provided by Mr. Lynch's best friend, his sister, his oldest daughter and Reverend Ray Stadmeyer from The Nativity of Our Lord Catholic Faith Community.

The attached letters paint a picture of a person who is always ready to lend a helping hand. Mr. Lynch is a loving and caring person who was always available to his friends and siblings during a time of need. He has been a loving and dedicated father to his nine children. His oldest daughter describes him as a father who put his children first. Despite his transgressions, Mr. Lynch continues to have the love, support and admiration of his children. Moreover, Mr. Lynch has given back to his community by way of his charitable work through his church. Mr. Lynch has donated his time to the Capuchins and was involved in a ministry designed to assist men coming home from prison or who had substance abuse issues.

As Reverend Stadmeyer stated, "We all make mistakes and sometimes err in the decisions we make. I also think we should not be judged solely on one moment in our lives, but be seen in the totality of all our days."

### C.   THE NEED FOR THE SENTENCE IMPOSED PURSUANT TO 18 U.S.C. §3553(a)(2)(A)-(D)

Mr. Lynch understands and takes no issue that there are consequences for bad choices. He fully understands that the Court must impose a sentence that reflects the seriousness of his offense and to promote respect for the law. Mr. Lynch has taken responsibility for his actions. This is evidenced by his timely admission of guilt and acceptance of responsibility for his actions. Moreover, Mr. Lynch has made a concerted effort to pay back the funds that he illegally obtained. A non-custodial sentence with conditions will certainly achieve the objectives of this sentencing factor.

### 1.    Seriousness of the Offense, Respect for Law and Just Punishment

Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." A sentence that is excessive in light of the seriousness of the offense promotes disrespect for law and provides unjust punishment. In August of 2003, Justice Anthony Kennedy gave a speech at the ABA Annual Meeting in San Francisco where he stated:

> Our resources are misspent, our punishments too severe; our
> sentences too long . . . the sentencing guidelines are responsible
> in part for the increased terms. . . [and they] should be revised
> downward.

On February 14, 2007, Justice Kennedy again addressed this issue when he

testified before the Senate Judiciary Committee and stated:

> Our sentences are too long, our sentences are too severe; our
> sentences too harsh . . . there is no compassion in the system.
> There's no mercy in the system.

In *United States v.  Bannister*, 786 F. Supp. 2d 617 (E.D.N.Y. 2011), the

Court addressed the length of the prison sentences in the United States:

> The increased prison population is due in large part to longer
> sentences. For the same crimes, American prisoners receive
> sentences twice as long as English prisoners, three times as long
> as Canadian prisoners, four times as long as Swedish prisoners.
> Yet these countries' rates of violent crime are lower than ours,
> and their rates of property crime are comparable.

### 2.    Deterrence to Criminal Conduct

Section 3553(a)(2)(B) requires the Court to consider "the need for the

sentence imposed . . . to afford adequate deterrence to criminal conduct." There is

no evidence that increases in sentence length reduces crime through deterrence.

"Three National Academy of Science panels, all appointed by Republican

presidents, reached that conclusion as has every major survey of the evidence."

Michael Ronry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A

Review of Research 28-29 (2006).

In so far as the statute instructs the Court to consider the need for this sentence to act as a general deterrent to others, there is no evidence, empirical or otherwise, that would support the theory and that a custodial sentence in this case would deter others. When the Sentencing Commission adopted the original guidelines in 1987, it sought to ensure that white collar offenders faced "short but definite period[s] of confinement." U.S. Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform*, at 56 (Nov. 2004) [hereinafter Fifteen Year Report]. The Commission explained that "the definite prospect of prison, though the term is short, will act as a significant deterrent to many of these crimes…." USSG, ch. 1, intro., pt. 4(d) (1987).

The commission has continued to study this theory of general deterrence and has encouraged research on the subject. Empirical research has consistently shown that while certainty has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.*

3.    <u>**Protection of the Public From Further Crimes of the Defendant**</u>

Section 3553(a)(2)(C) requires the Court to consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." This purpose has to do with both the defendant's risk of recidivism and the danger posed by the defendant, if any. It "is particularly important for those offenders whose criminal histories show repeated serious violations of the law." S. Rep. No. 98-225 at 76 (1983). It is not so important for first offenders, for those with limited criminal histories, for those who have little risk of recidivism, or for those who have a strong potential for rehabilitation. Given his lack of a criminal history, Mr. Lynch's risk of recidivism is extremely low.

In its study entitled, "Measured Recidivism", http://www.ussc.gov/publicat/Recidivism_General.pdf the Commission offered a statistical analysis of the type of person most likely and least likely to re-offend. The study demonstrated that the risk of Mr. Lynch re-offending is virtually nil, and also lends support to the defense position that it is important in this case not to impose a custodial sentence.

The study demonstrated that 1) those over 50 are less likely to recidivate than those under 50; 2) those who have not used illicit drugs, are less likely to recidivate than those who did; 3) those who are or have been married are less likely to recidivate than those who have never been married; 4) non-violent offenders are

11

less likely to recidivate than violent offenders; 5) first time offenders are less likely to recidivate than repeat offenders; 6) those who are employed are less likely to recidivate than those who aren't; and 7) those who are sentenced to non-jail sentences are less likely to recidivate than those who receive jail. The Commission's research has demonstrated that a 51-year old defendant with a limited criminal history has only a 6.2% chance of recidivating. *Id.*

This study coupled with the extensive efforts demonstrated by Mr. Lynch's post-arrest conduct support the proposition that Mr. Lynch will not re-offend. Each of the factors studied, as applied to Mr. Lynch, support this position. The only factor that this Court has any control over is the last factor – whether to impose a jail sentence or not. In this case, there is no reason to do so.

Mr. Lynch had been a law-abiding citizen prior to and since the offense conduct. He has recognized the flaws of his conduct and has taken affirmative steps to avoid repeating them. He has continued to serve the community by way of his participation with the Capuchin ministry. A custodial sentence would only serve to provide "just deserts" at a very high cost to the American taxpayer while hindering Mr. Lynch's ability to make restitution to Holy Cross.

**D.    THE KINDS OF SENTENCES AVAILABLE PURSUANT TO 18 U.S.C. §3553(a)(3)**

There is nothing to limit this Court's creativity in sentencing Mr. Lynch. In the Sentencing Reform Act, Congress directed the Sentencing Commission to

"insure that the guidelines reflect the general appropriateness of imposing a sentence *other than imprisonment* in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. §994(j) (emphasis added).

This Honorable Court has the unfettered discretion to impose a non-custodial sentence.  Mr. Lynch respectfully requests that the Court consider his acceptance of responsibility for his actions, his diligent efforts to pay back Holy Cross as well as his personal history and his status as a husband and the father of nine children.

### E.   THE SENTENCING RANGE SUGGESTED BY THE SENTENCING GUIDELINES PURSUANT TO 18 U.S.C. §3553(a)(4)

The guideline ranges should be given minimal weight in this Court's §3553(a) analysis.  *See, United States v. Aldelson*, 441 F.Supp.2d 506, 514 (S.D.N.Y. 2006) (citing Kate Stith & Jose A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* (1998). This Honorable Court is well aware that the guidelines are only one of the many §3553 factors the Court must consider in fashioning a sentence.

### F.   ANY PERTINENT POLICY STATEMENT FROM THE SENTENCING COMMISSION PURSUANT TO 18 U.S.C. §3553(a)(5)

This factor is not applicable.

## G.    THE NEED TO AVOID UNWANTED SENTENCING DISPARITIES PURSUANT TO 18 U.S.C. §3553(a)(6)

This factor is not applicable.

## H.    THE NEED TO PROVIDE RESTITUTION PURSUANT TO 18 U.S.C. §3553(a)(7)

As stated herein, Mr. Lynch has been diligently paying back Holy Cross $5,000 per month pursuant to the 2019 Settlement Agreement. To date, Mr. Lynch has paid back $257,000, leaving a balance of $82,774. If Mr. Lynch were to miss a payment, he will owe an additional $132,000.

To be sure, a custodial sentence will make it impossible for Mr. Lynch to abide by the payment terms of his Settlement Agreement. The Court should also note that Mr. Lynch has been working as a laborer with a home improvement company in order to keep his commitment to pay back the defalcated funds to Holy Cross.

## V.    **CONCLUSION**

Among my many other problems with the guidelines, putting aside their irrationality, putting aside their draconian far too punitive approach to all crimes, not just white collar crimes, putting aside their very real responsibility for the portion of the mass incarceration of which this country should be so ashamed, is the fact they regard sentencing as an exercise in bean counting, as opposed to one of the most difficult tasks that those fallible human beings we call judges have to undertake, which is a moral judgment on a fellow human being.

But, Congress, in its wisdom in enacting Section 3553 has very clearly recognized the moral judgments involved, because they put first and foremost that the Court must focus on the nature and circumstances of the

14

offense, in this egregious, and history and characteristics of the defendant, in this case impaired. And they direct how the Court is to resolve that tension. And also to take account of the somewhat more abstract, but still very fundamental purposes, of sentencing such as deterrence, just punishment, and the like.

By decreeing that the Court shall impose a sentence sufficient, but not greater than necessary, to comply with these various purposes, that's an expression of a moral judgment, too. That's an expression of the notion that even in this cruel world where people commit, as the defendant has here, terrible offenses, the punishment of prison is not one that can ever be justified beyond the purposes that Congress has specified. It can never be an act of revenge, it can never be an act of gratuitous expression of outrage. Life is too precious to permit that kind of sentence.

*United States v. Caspersen*, Case No. 16-00414, (USDC, SDNY, December 7, 2016), pp 80-81, Hon. Jed Rakoff.

As Judge Rakoff noted, sentencing is a unique and human event. Mr. Lynch has taken full responsibility for his conduct. Mr. Lynch is prepared to accept this Honorable Court's sentence.

For all the reasons set forth above, Mr. Lynch respectfully requests a sentence that is "sufficient but not greater than necessary" to comply with all the sentencing factors. Mr. Lynch respectfully and humbly submits that a non-custodial sentence is appropriate in this case.

Respectfully submitted,

*/s/ Michael A. Rataj*
MICHAEL A. RATAJ (P43004)
Attorney for John R. Lynch
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529

15

and

_/s/ William Swor_____
WILLIAM SWOR (P21215)
Attorney for John R. Lynch
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529

Dated:  February 9, 2022

## **CERTIFICATE OF SERVICE**

      Michael A. Rataj hereby states that on February 9, 2022, I electronically filed *Defendant's Sentencing Memorandum and Certificate of Service* with the Clerk of the Court using the ECF system which will send notification of such filing to all parties listed on the Electronic Mail Notice List, and forwarded a copy via electronic mail to Probation Officer Kody Bellamy.


      */s/ Michael A. Rataj*
      MICHAEL A. RATAJ